The next case for argument is 24-1416, Centripetal v. ITC. Mr. Richardson, good morning, whenever you're ready. Good morning. Judge Prost, and may it please the Court. For the 917 patent, the only question here is whether the independent claims are obvious over source fire. As my colleague explained this morning, source fire does not disclose many elements of the claimed invention, including flow-level time data, and you can reverse the Commission's decision on that basis alone. Counsel, the government argues that you, quote, provide no explanation as to what effectively correlating means or why comparing two sets of logs to a database has any similarity to correlating the logs with each other. Did you ever explain that in your opening brief, and if so, where? Is this on the correlate limitation for infringement, Judge Wallen? Yes, the testimony below showed on infringement that the way these That's not my question. Oh, sorry. My question was, did you ever explain that in your opening brief, in your blue brief, and where? I believe we did. This is where we addressed the DOE argument from Dr. Cole, where we explained that the correlation through the ATI subscription database correlates net flow records that contain inbound and outbound packets. So if I can just take a step back, the way the Vision 1 products work is you have No, I have a lot of questions about your brief. Understood. Okay. In your opening brief, you argue that Dr. Cole, I'm quoting, testified that Keysight's products include physical ports and associated software, which together constitute devices that can be provisioned with roles. Where in the record was that advanced at the hearing? Yes, so Dr. Cole provided 15 pages of testimony on this, starting at Appendix 38048. His analysis walked through internal Vision 1 documents, source code analysis, and his own testing. And all of that was tying the physical ports to the associated software, specifically the AppStack software. I would point you specifically to the, it is the Vision 1 User Guide, Appendix 50544, which talks about provisioning Ethernet ports with rules. So this was developed throughout Dr. Cole's testimony. Now, I think what the other side says is there was a portion of his testimony where he had a demonstrative with the physical ports, but you have to look at that testimony in context of the pages that came before, where he's talking about the AppStack software being associated with the physical ports to constitute the device recited in the claims. Keysight argues that you didn't acknowledge the Commission's finding that you waived any argument as to the portion of element H of Claims 22 and 43, requiring that the system communicate to a device located in the first network, the data identifying the host located in the first network. Because you failed to raise it in your pre-hearing brief, why didn't you acknowledge that finding in your opening brief? If this wasn't clear, I'm sorry, Judge Wiley. We acknowledged that in the context of saying that we argued throughout the case that the entire dashboard is what communicates the correlated information. There was a dispute below about the update from version 4.2 to 4.3 of the Vision 1 product. When an entity, a judicial entity or a finding entity, uses the word waiver, you should pay attention to it. And that's my question. Why didn't you acknowledge that finding of waiver and deal with it squarely? I believe we tried to address that point by pointing to where we had made the argument, but I take the point about not squarely addressing the waiver. I'm trying to explain how we briefed that issue to show that we relied on the entire dashboard throughout the proceedings below. The government and Keysight both argue your opening brief failed to contest the Commission's finding that you failed to identify and communicate aspects of limitations ENF of claims 22 and 43. Where in the opening brief did you address the Commission's findings as to those specific aspects? Your Honor, if you look at appendix page 69 and 70, there are not separate findings on those limitations. What the Commission did was point back to its earlier discussion of the provisioning limitation, and we took that on as one issue on our brief. It's a finding, yes. Well, yes, we took it on as one issue, Your Honor, because the question of whether... Where in the brief did you address the Commission's finding on that? It was the opening issue on infringement where we discussed that the device was not simply the physical ports because that was the basis for that limitation, Your Honor. All right. Your reply brief contains a footnote which says, appellees also assert that centripetal did not address the identifying and communicating limitations of claims, but the ALJ's decision on these limitations was cabin to a theory centripetal did not raise that the physical ports alone are 370 patent devices and is wrong for the same reasons. Can you just disregard the Commission's findings because you disagree with them? No, Judge Walken, that's not what we were trying to say. I'm sorry if that was the suggestion. What we were saying was the issue we raised in our opening brief about whether or not the device was limited to the physical ports, that issue cut across the board on both the provisioning limitation, the identify, generate, and communicate limitations. So we took it on together. That's what we were trying to say in opening and in reply. Okay. The government and Keysight both argued throughout and the board, the findings below, both argue that you have waived many of your issues on appeal and some of these waivers are appealed as positive. If we agree with these waiver arguments, would you have any issues left on appeal? We would not for the 370, Your Honor. We would still encourage the court to reach the 917 patent. And I think that's an important issue here because source fire does not disclose the time data of the 917 for two separate reasons. But if we deal with the other case, you're assuming we don't affirm on the other case. If we affirm on the other case, 917 is done, right? I believe that is correct if you reach the time data issues that are raised on the merits in both cases, Judge Prost. But I think that would be wrong because what the claims require, the time data is part of the packet flow analysis data. So there has to be flow level data for there to be time data. And the way that source fire works, as my colleague explained, it has an event database limited to packet level data and then an interface that draws on that packet level data. And if source fire was enough to render obvious this claim, there'd be no need for the updating limitation at all. So source fire does not have the time data for that reason. But even if you disagreed with that, as my colleague explained, you still can't display the time data when analyzing multiple packets at the same time in source fire. That's an independent problem because the only reason... Why would it matter if, just for the sake of argument, if we affirmed the finding of unpatentability of the 917 in the first case? Why would it matter what basis we did it on? That would be the end of that patent and it couldn't be the basis for an exclusion order in this case, could it? If we reach the time data question or don't reach it, it doesn't matter. If we were to affirm the invalidation of the 917 in the first case, it can't come back in this case. Yes, John. I think under Section 318 the claims would then be canceled. So that is correct. But I would like to... The time data cuts across both appeals. So I would like to just finish that point. I want to ask you one more question. I don't want to give you one more. I want to get to the 370 questions too. This bothers me. In both your opening and reply brief, your arguments entirely skim over the discredited record testimony of your expert. And I believe it is discredited. But you just skim over it and leave it. And they're ultimately nonresponsive to many of the arguments presented against you. Waiver being across the board, being the big one, but many others. It seems to me that's willful blindness to what the briefs are saying. How do you deal with that? Judge Wallach, I take the point. But what we were trying to do in our brief was to consolidate our issues in a way that organized them for the court. We were not trying to skim over waiver or avoid any of the decisions below. And we tried to focus on the legal errors in the decision, both on infringement and on the 370 validity issues as well. You know, when an opinion below says repeatedly, you waive this, you waive this, you waive this, it seems to me you have to grasp that now firmly. I agree, Judge Wallach. And we tried to present those issues. And I take your point that we may not have done so adequately. 370 patent ineligibility. I want to talk about that a little bit. Elective power in particular and why our precedent doesn't govern here. So this court has consistently drawn a line between claims that simply use computers as tools to perform abstract functions and claims that are aimed at a problem that only arises in computer networks. That's in SRI. And that's how SRI distinguished electric power. And these claims fall into that latter group. These claims are aimed at the problem that arises when information is lost as data moves from one network to another network. That's clear in the claim language, which requires generating data that identifies the host for each packet. So once you recognize that these claims are directed to a problem that only arises in computer networks, that distinguishes electric power, CardioNet, Bridge and Post, custom media, all of the cases that involve using computers as tools. When you say recognize that, is that a fact question or a question of law? I believe that's a question of law, Judge Stark. This court explained in CardioNet and then U.S. Synthetic that the step one inquiry is usually a legal issue resulting in the four corners of the bed. In this case, because it came from a commission, I think both sides actually present a lot of expert testimony on this very question, whether these are using computers as a tool or improving computer technology. Does that change your answer here? It does not, Your Honor. I think you can still rely on cases like U.N. Synthetic to resolve this case based on the four corners of the patent and the intrinsic record. And here I think the patent does clearly recite a concrete solution to a computing problem. This patent doesn't just say analyze data to identify the host of the packets leaving the first network. It's not results oriented in that way. It recites a specific sequence of steps to achieve that result. You have to generate logs of inbound and outbound packets, correlate those logs against one another, use that correlation to generate the new data identifying the host, and then communicate that data to a system where it can be used to diagnose threats. So this is not just a result. It's telling you how to get there. So even if this court is inclined to affirm on infringement, we would encourage the court to reject the commission's 101 analysis or at a minimum not rely upon 101 as the basis for its decision. But we wouldn't have to. I mean, we could go either way. You could do, if it's an affirmance, we could affirm on no infringement without reaching the eligibility because under ITC there's no further consequence other than the exclusion order, correct? That's correct, Judge Pross. You have the authority to correct the 101 decision, but you do not need to do so. We would encourage the court once again at a minimum not to endorse the 101 reasoning as the basis for its decision. Thank you. Good morning. May it please the court. With the 370 patent, the commission found no violation based on non-infringement of seven different limitations, a lack of technical prompt. Let me ask you a couple of housekeeping questions. I think Judge Pross raised at least one. You argue centripetal has waived most of its arguments. In fact, I think you pretty much say all of them between the two of you. If we agreed with you, would there be any issues left for us to reach the merits? So I don't think there is, Your Honor. On both the 917 and the 370? So in the 917, the only issue they preserved is that SourceFire can't display time data. On the 370 patent, they need to win on absolutely every issue because everyone individually supports that finding of no violation, and they can't do that because they waived several aspects, as Judge Wallach had mentioned. So the only issue left... Why don't you just deal with the waiver point just very briefly? Okay. So if everything is waived, the only thing that remains... So the 370 patent, their opening appeal brief does not mention the identify and communicate aspects of elements E and F. And they only mention that in a reply brief footnote where centripetal argues that that issue is bound up in the meaning of device. But that argument was made too late. It's in a reply brief. It's also wrong. The ALJ's findings on Appendix 70 found that the communicate limitation is unsatisfied. Well, it's also wrong, but I asked you about the waiver portion of your argument, not the merits portion. Okay. So strictly about waiver, there is nothing left in the 370. The court could just affirm the commission based solely on waive. Based solely on... I didn't hear what you said. On waiver. You could pick any of our various forms of waiver. If one of them applies, there's no reason to address the merits. Pick your best one. One very solid one is... It's hard to pick. They're all my best friends. I love all my waivers equally. For the technical prong, the ALJ below found that centripetal waived its argument because it completely changed its argument from the pre-hearing brief to the post-hearing brief. Okay. So there are waivers with respect to the briefing here, and then there are waivers with respect to the... That's correct. So that was a waiver made before the ALJ. The ALJ made her finding based in part on waiver. Then at the appellate level, neither of centripetal's appeal briefs addressed that finding of waiver at all. I mean, that waiver is important because they changed their argument. Like, Keysight, if they had proper notice, might have presented different evidence. But moving on to the... But then we'd still have to deal with the eligibility. That wipes out the non-infringement, right? How does that wipe out the eligibility? So they're trying to find a finding of violation. A violation, they need to establish everything. They need to establish that it's infringement and ineligibility. So if it's not infringed, it doesn't really matter if it's eligible. And do you... Judge Prost raised this, but if we were to affirm in the companion case, the 1097, would there be any outstanding issue to resolve 917 patent in this appeal? No. As Judge Stark mentioned, the claims would be canceled, and then it doesn't really matter what the commission did because the claims are going to be gone. And the two claims on the cross appeal, I don't know if you followed the prior thing. We've got two claims that survive the IPR. Those are not an issue in this case on the 917. Correct. It's just claims 11 and 20, which were found. If we were, I think we're all on the same page on the 917 and the implications potentially of the first case for this one. But if we were to reach the 917 in this case, they emphasize the time data, but they also have secondary consideration evidence that I think is not part of the first appeal. Could I just have you quickly address that? I'm right that there's secondary consideration. Yes, there is secondary. That is correct. They make this argument, for instance, at Gray Brief at page 15, that the ALJ had a circular assertion that the 917 patent did not solve a longstanding industry need because the claim to mention had already been disclosed by source fire, which they say is circular and kind of funny to conflate what's in the prior art that made out the prima facie case of obviousness and then use that also to undercut the secondary consideration evidence. Could you address that? Sure. So this case is somewhat unique that source fire is an obviousness reference, but it did not require modification. I don't really know why that happened, but that's what happens. It's a single reference obviousness. It's a single reference obviousness, did not require modification. So you can't really have a long felt need if there was a product that did exactly what the claim said. And that's what the court found in Zup. Zup was not even, I think that was just the core of the invention previously. So it may be circular, but at least in a single reference obviousness context, it's also the logical common sense conclusion, I guess. I think that absolutely. You're saying you have a long felt need, but there's a product that already exists that does it. How is that a long felt need? It's already being met by this source fire product. If I could just touch on time data, like the claims don't require the display of time data. They specifically say that you need to just display a portion of the packet flow analysis data. There's no reason that portion has to be time data. And there's no real dispute that source fire displays the threat identifier and the block to loud information, which is also packet flow analysis data. So their only argument that they preserved is about this time data that isn't even required by the fact. There's no further questions. You're dividing the argument here and you've already used. Did we start at 15? We started at 8. Okay, I'm sorry. I think my arguments are well set forth in my briefs. I'm open to any questions if anyone has any. Mr. Mitchell. Good morning, Your Honors. Jonah Mitchell. At the risk of jumping ahead, I imagine I'm going to get the housekeeping questions, too, to make sure we're all on the same page. So I figured I should cut to the chase. And I think what you heard from ITC counsel were aligned from that perspective. In other words, the court's findings on if the waiver findings are upheld, that's the end of the story. And then as it relates to the 9-1-7 patent, if the IPR findings are upheld, that's the end of the story on invalidity. So I want to be mindful of everyone's time to the extent that there are questions. I want to make sure that I do address them with you. But I thought at least I would maybe, given what I had heard from the panel before, try to figure out how best to focus the time. Well, you've answered mine. Well, you wanted to spend a little time on eligibility, then. Yeah. So the Commission's findings are rock solid there. And I think this class of claims, which the ITC found, while in the collection of information, analysis of information and communicating results, there is a long line of precedent that recognize that those types of claims, pure information claims, are abstract, right? Electric power is one of those cases. There's been many other cases that have dealt with those claims in the same fashion. The nature of the claimed elements are pure generic components, conventional technology. And so this doesn't result based language, too, which is one of the other hallmarks of abstractness as well. So I think the Commission's findings, which set up these issues, are absolutely in line with this Court's precedent. You've used the word findings twice. Is that intentional? Were they fact findings by the Commission? The Commission did receive evidence, as you observed, Your Honor, on that issue, in addition to her own analysis that she conducted. But yes, evidence was received from both parties at the step one and the step two issues, which is a little bit unusual in terms of how these cases... Are they fact findings, in this case, that we would review deferentially, or is step one still a question of law under our law? I mean, I think under the law it's still... I don't think that this has been squarely addressed. I still tend to think of it as a question of law, but I don't think there's... I don't know that this has really been teed up. As a matter of law with this patent, how do I decide that this is not a technical solution to a technical problem? How do I know that? In view of the Court's prior precedents, addressing the same types of claims in the same way that the Court has addressed these types of claims before, which, again, are pure information manipulation claims using purely result-based functional language. And there's plenty of precedent recognizing that those claims are abstract. Nothing further? Thank you. Thank you. We'll give you three minutes for your battle. Thank you. Thank you, Your Honor. Just a few brief points. I think, based on the argument from my friends here, everyone agrees that the time data issue was preserved on the merits. That issue cuts across both appeals you heard this morning, and that issue does not turn on the claim construction dispute. So this Court does need to reach the time data issue on the merits to resolve these appeals. That's entirely inconsistent with what you told me before. If we were to affirm the unpatentability findings of the 917 claims in the first appeal, even if we don't reach time data, maybe we do, maybe we don't, it doesn't matter. If the claims are dead, you can't get an exclusion order. That's exactly correct, Judge Stark. But to resolve the first appeal, the time data issue on obviousness... Okay. Your point is about the first appeal. You're not saying no matter what, we have to address time data in this appeal. That is correct. I'm just saying the issue is presented in both appeals and is dispositive of both. Do you want to push back on some of the waiver points that have been made? With respect to the 370? Yeah, I would just come back to the point we put in our brief exactly where we had preserved the arguments below. I take the point that we could have been clearer about the generate and identify limitations. We believe that turns on the same issue as the provisioning limitation. But I would like to just use my time to briefly touch on the merits of the time data issue about whether a portion of the data needs to be displayed. We agree that only a portion of the flow level data needs to be displayed to practice these claims. You don't need to display all of the flows all of the time in the dashboard. But that's very different than saying it doesn't matter whether it's even possible to display time data in the prior art. And that's the problem in source fire. There's no evidence in this record that it's possible to display time data when analyzing multiple packets at once. Judge Stark, briefly on your point about secondary considerations, ZUP is a very different case. In ZUP, the parties agreed about the disclosures in the prior art and the dispute was just motivation to combine. So you had a situation where the parties said, we agree the prior art's very close to the patented invention. What do we do about that gap on motivation to combine? Here you have a factual dispute about the differences between the patented invention and source fire. The court should have looked to the secondary considerations to resolve that dispute. And instead it got the analysis backward and said, because I find that this prior art reference already discloses the invention, I don't need to consider those secondary considerations at all. And then finally on Section 101, I did not hear my friends provide a reason why these claims are not directed to a problem that arises in computer networks. And if you agree with me on that, that distinguishes electric power bridge and post and other cases where computers were just used as tools. And then you have to ask, is the invention providing a specific and concrete solution? And here the claims are much more similar to those found patent eligible in SRI and an ONFISH than they are to claims like Custom Media or Hawk. Perfect timing. Thank you very much. We thank both sides and the cases submitted.